**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MORGAN KUKOVEC**, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>**THE ESTÉE LAUDER COMPANIES INC.**,<br><br>        Defendant. | Case No. 1:22-cv-01988<br><br>Hon. Manish S. Shah<br><br>Magistrate Judge Young B. Kim |

**DEFENDANT THE ESTÉE LAUDER COMPANIES, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

PLAINTIFF'S ALLEGATIONS AND JURISDICTIONAL FACTS........................................... 3

    A.    Plaintiff's BIPA Claims Against Estée Lauder.......................................... 3
    B.    Estée Lauder Is Not "At Home" in Illinois............................................. 4
    C.    Estée Lauder Has No Contacts with Illinois Relating to Plaintiff's Claim............ 4

ARGUMENT ..................................................................................................................... 5

    A.    Legal Standard .................................................................................. 5
    B.    The Court Cannot Exercise Personal Jurisdiction Over Estée Lauder and
        Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2) Is Proper ........................ 6

        1.    The Court Lacks General Jurisdiction Over Estée Lauder ........................ 6
        2.    The Court Lacks Specific Jurisdiction Over Estée Lauder........................ 7

    C.    The Court Should Dismiss the Complaint for Lack of Proper Venue
        Pursuant to Fed. R. Civ. P. 12(b)(3) Because Plaintiff's Claims Are
        Subject to Arbitration, or Compel Arbitration, and Any Such Arbitration
        Must Proceed on an Individual Basis................................................. 10
    D.    Even If the Court Determines That It Has Personal Jurisdiction Over Estée
        Lauder (It Does Not) and Venue is Appropriate (It Is Not), Dismissal Is
        Appropriate Under Rule 12(b)(6) Because Plaintiff Does Not and Cannot
        State a Plausible Claim for Relief.................................................... 12
    E.    Plaintiff Lacks Standing To Sue With Respect to Any Alleged BIPA
        Violations on Websites Other Than Too Faced.................................... 14

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ...................................................................................8

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) ...........................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................6, 12, 13

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ..........................................................................................11, 12

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) ...................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................6

*Brodsky v. Aldi Inc.*,
    2021 U.S. Dist. LEXIS 185436 (N.D. Ill. Sept. 28, 2021) ...................................15

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) ..................................................................................................7

*Calderone v. City of Chicago*,
    979 F.3d 1156 (7th Cir. 2020) .................................................................................6

*Cont'l Cas. Co. v. Am. Nat. Ins. Co.*,
    417 F.3d 727 (7th Cir. 2005) ...................................................................................6

*Corwin v. Conn. Valley Arms, Inc.*,
    74 F. Supp. 3d 883 (N.D. Ill. 2014) .......................................................................14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..................................................................................................7

*DirecTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015) .........................................................................................11, 12

*Everette v. Union Pac. R.R.*,
    2006 U.S. Dist. LEXIS 68427 (N.D. Ill. Sept. 5, 2006) ..........................................5

*Flaherty v. Clinique Laboratories LLC*,
    2021 U.S. Dist. LEXIS 219455 (N.D. Ill. Nov. 15, 2021)......................................15

*Guaranteed Rate, Inc. v. Conn*,
    264 F. Supp. 3d 909 (N.D. Ill. 2017) .......................................................................7

*Gullen v. Facebook.com, Inc.*,
   2016 U.S. Dist. LEXIS 6958 (N.D. Ill. Jan. 21, 2016) ........................................................8

*Gutierrez v. Wemagine.ai LLP*,
   2022 U.S. Dist. LEXIS 14831 (N.D. Ill. Jan. 26, 2022) ....................................................9

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) ..........................................................................12, 13

*Hill v. Shobe*,
   93 F.3d 418 (7th Cir. 1996) ..............................................................................................14

*Jauquet v. Green Bay Area Catholic Educ., Inc.*,
   996 F.3d 802 (7th Cir. 2021) ..............................................................................................6

*Kipp v. Ski Enter. Corp. of Wis., Inc.*,
   783 F.3d 695 (7th Cir. 2015) ..............................................................................................5

*Lexington Insurance Co. v. Hotai Insurance Co., Ltd.*,
   938 F.3d 874 (7th Cir. 2019) ..............................................................................................7

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ..............................................................................................6

*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth*,
   473 U.S. 614 (1985)..........................................................................................................10

*Mussat v. IQVIA, Inc.*,
   953 F.3d 441 (7th Cir. 2020) ..............................................................................................5

*Namuwonge v. Kronos, Inc.*,
   418 F. Supp. 3d 279 (N.D. Ill. 2019) ...............................................................................13

*Payton v. Cnty. Of Kane*,
   308 F.3d 673 (7th Cir. 2002) ............................................................................................14

*Pearson v. Target Corp.*,
   2012 U.S. Dist. LEXIS 187208 (N.D. Ill. Nov. 9, 2012)..................................................15

*Petropoulos v. City of Chicago*,
   448 F. Supp. 3d 835 (N.D. Ill. 2020) .................................................................................6

*Porter v. NBTY, Inc.*,
   2016 U.S. Dist. LEXIS 163352 (N.D. Ill. Nov. 28, 2016)................................................15

*Price v. Schlee & Stillman, LLC*,
   2017 U.S. Dist. LEXIS 102279 (N.D. Ill. June 29, 2017) ................................................7

*Purdue Research Found. v. Sanofi–Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ..............................................................................................5

*Reed v. NBTY*,
   2014 U.S. Dist. LEXIS 197398 (C.D. Cal. Nov. 18, 2014)..............................................15

*Salkauskaite v. Sephora USA, Inc.*,
   2020 U.S. Dist. LEXIS 94760 (N.D. Ill. May 30, 2020) ...................................................9

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) ................................................................................................10

*Stein v. Clarifai, Inc.*,
    526 F. Supp. 3d 339 (N.D. Ill. 2021) .....................................................................9

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) .................................................................................7

*Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*,
    51 F. Supp. 3d 713 (N.D. Ill. 2014) .....................................................................10

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..........................................................................................8, 10

*Young v. Lehigh Corp.*,
    1989 U.S. Dist. LEXIS 11575 (N.D. Ill. Sep. 26, 1989) ......................................14

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
    466 F.3d 577 (7th Cir. 2006) ...............................................................................10

**Statutes**

740 ILCS 14/15(a)-15(e) ...........................................................................................13

740 ILCS 14/20 ...........................................................................................................14

9 U.S.C. § 4 ...................................................................................................................5

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ...........................1

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ................................................................................................1

Fed. R. Civ. P. 12(b)(3) ................................................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................................................1

Rule 12(b)(2) .................................................................................................................5

Rule 12(b)(3) ............................................................................................................5, 10

Rule 12(b)(6) ...........................................................................................................6, 12

Terms & Conditions, https://www.toofaced.com/terms-conditions (last visited
    May 27, 2022) ........................................................................................................11

Defendant The Estée Lauder Companies Inc. ("Estée Lauder") submits this memorandum of law in support of its motion to dismiss the putative class action complaint (the "Complaint") (Dkt. 1, Ex. A) filed by Plaintiff pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3), and (b)(6).

## **INTRODUCTION**

Plaintiff claims that she visited the website for Estée Lauder's Too Faced brand, tested various foundations by employing a tool that allowed her to virtually "try on" these cosmetics, and that in that process, she believes her facial geometry was collected or captured in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). In doing so, however, Plaintiff does not identify a jurisdictional nexus to Illinois or explain why proceeding as a putative class action in this court is appropriate given the terms and conditions outlined on Too Faced's website (the "Terms and Conditions"), which require individual arbitration. Nor does she set forth any plausible factual allegation to support her conclusory statements that the Too Faced website operates as she alleges. Plaintiff similarly fails to offer a single factual allegation supporting a claim with respect to Estée Lauder's other brands' websites. Her Complaint should be dismissed in its entirety for lack of personal jurisdiction, lack of proper venue, or in the alternative, because her claims with respect to the Too Faced website are factually insufficient and she lacks standing to bring a claim with respect to any other Estée Lauder brands' websites.

***First***, the Court lacks personal jurisdiction over Estée Lauder. Estée Lauder is not "at home" in Illinois, and Plaintiff alleges no contacts between Estée Lauder and Illinois relating to this suit beyond Plaintiff's purported one-time use of a "Virtual Try-On" tool from Estée Lauder's Too Faced website. Plaintiff's alleged decision to initiate a voluntary visit to the Too Faced website and to use a Virtual Try-On tool—a geography-neutral application that operates the same for any customer who chooses to access and engage with it, regardless of the customer's physical location—does not establish the requisite minimum contacts to support personal jurisdiction.

1

Estée Lauder's declaration in support of this motion further demonstrates and confirms that Estée Lauder does not host the Virtual Try-On tool and the tool does not run on an Estée Lauder server or a server that Estée Lauder controls. These facts, among others, disprove the existence of the necessary jurisdictional nexus needed to hale Estée Lauder into an Illinois court under BIPA.

*Second*, the Court should dismiss Plaintiff's claims because, as provided by the Terms and Conditions plainly displayed on the Too Faced website, arbitration is the only forum in which Plaintiff can bring her claims and Plaintiff waived her right to assert claims on behalf of a class.

*Third*, even if there were personal jurisdiction over Estée Lauder here (there is not), and venue were appropriate (it is not), Plaintiff's claims are facially insufficient. Among other things, the Complaint lacks any plausible factual allegations showing that Estée Lauder collected, captured, stored, possessed, or otherwise obtained Plaintiff's biometric identifiers or information when she tested different foundation cosmetic products on the Too Faced website. Instead, Plaintiff submits conclusory allegations devoid of further factual enhancement and fails to include any specific allegations as to what Estée Lauder actually did to purportedly collect or possess Plaintiff's biometric data. While Plaintiff quotes and references the alleged tracking performed by a separate and unrelated company, *see* Compl. ¶ 23 & n.1, she at the same time admits it has no association with Estée Lauder and does not explain why what this other entity is purportedly doing or saying has any relevance to her claims against Estée Lauder. There is no basis for Plaintiff's suggestion that the Court impute purported third-party conduct onto Estée Lauder here.

*Finally*, the Court should dismiss Plaintiff's claims for lack of standing to the extent they are based on purported violations of BIPA relating to the use of a Virtual Try-On tool on any website other than the Too Faced website—the only website that Plaintiff claims to have visited.

For all these reasons and as discussed below, this motion should be granted in its entirety.

## PLAINTIFF'S ALLEGATIONS AND JURISDICTIONAL FACTS

### A.     Plaintiff's BIPA Claims Against Estée Lauder

Plaintiff alleges that Estée Lauder offers a "Virtual Try-On" tool to consumers that visit its Too Faced brand and certain other brands' websites, including MAC Cosmetics, Smashbox, Estée Lauder, and Bobbi Brown. *See* Compl. ¶¶ 16, 18, 41. While Plaintiff alleges she personally visited the Too Faced brand's website and used the "Virtual Try-On" tool on December 30, 2021, *see id.* ¶¶ 17-18, 32, Plaintiff does not allege she visited maccosmetics.com, smashbox.com, esteelauder.com, or bobbibrowncosmetics.com or that she used a Virtual Try-On tool on any of these brands' websites.

In addition, Plaintiff alleges, on information and belief, that the Virtual Try-On tool she allegedly used on the Too Faced website "operates by capturing the facial geometry of user's photos, regardless of whether the photo is taken by web or phone camera while using the Virtual Try-On tool, uploaded to the tool, or captured via live web or phone camera feed." *Id.* ¶ 23. Plaintiff also alleges, on information and belief, that Estée Lauder "stored her facial geometry for an unspecified period of time after Plaintiff used the Virtual Try-On tool." *Id.* ¶ 36. She does not cite or discuss any support for her conclusory allegations regarding how the website allegedly operates or for her conclusion that Estée Lauder "captured and collected" her facial geometry when using the tool on the Too Faced website. *Id.* ¶ 35. Rather, for an unspecified reason she refers to the website of an alleged "similar developer," htttps://modiface.com/#product, which purportedly performs "tracking" when its virtual try-on application is used. *Id.* ¶ 23 & n.1. To be sure, Plaintiff does not allege that this "similar developer" is associated with Estée Lauder, the defendant in this lawsuit, or that Estée Lauder is in possession of Plaintiff's biometric data.

Plaintiff asserts two counts for alleged violations of BIPA on behalf of herself and a putative class of all persons who used the "Virtual Try-On" tool on certain of Estée Lauder's

brands' websites while residing in Illinois during the five years preceding the filing date of the Complaint. *Id*. ¶¶ 41-70. These websites are for the Too Faced, MAC Cosmetics, Smashbox, Estée Lauder, and Bobbi Brown brands (the "Other Brands"). *See id.* ¶ 41.

### B. Estée Lauder Is Not "At Home" in Illinois

Plaintiff alleges that Estée Lauder is a Delaware corporation with its principal place of business in New York, New York. *See* Compl. ¶ 2. Estée Lauder does not deny this and in fact confirms it. *See* Declaration of Jessica Madrid ("Decl."), attached as Exhibit A ¶ 3.

### C. Estée Lauder Has No Contacts with Illinois Relating to Plaintiff's Claim

Estée Lauder had no contact with Plaintiff or Illinois in connection with Plaintiff's alleged encounter with the Too Faced website and use of the "Virtual Try-On" tool. Although Estée Lauder may sell products in Illinois, the "Virtual Try-On" tool found on its Too Faced brand's website allegedly accessed by Plaintiff is not specifically directed at Illinois or targeted at Illinois customers. *See* Decl. ¶ 5. The same is true of the websites of the Other Brands. *Id*. Estée Lauder has created an interactive website allowing customers who access the website from any location to virtually sample certain of Estée Lauder's products before making the decision to purchase them. *Id*. The "Virtual Try-On" tool is geography-neutral; it operates the same for any customer who chooses to access and engage with it, regardless of the customer's physical location. *Id*.

User interactions with the Virtual Try-On tool do not entail any contacts with Estée Lauder or its server, in Illinois or otherwise. The "Virtual Try-On" tool is not hosted on and does not run on an Estée Lauder server or on a server that Estée Lauder controls. *Id*. ¶ 7. Rather, it is embedded onto Estée Lauder's Too Faced website via an iFrame interface. *Id*. Upon launch and entry to the "Virtual Try-On" tool, the user must grant access to the camera to use the tool or select a photograph to upload and use in conjunction with the "Virtual Try-On" tool. *Id*. During a user's

"Virtual Try-On" tool session, no information or data are sent to or from any servers, and the "Virtual Try-On" tool does not interface with any external servers while operating. *Id*. ¶ 8.

Estée Lauder, through the "Virtual Try-On" tool, does not collect, store, obtain, or transmit any facial geometry or other biometric data externally and does not have the ability to collect, store, obtain, or transmit any facial geometry or biometric data externally. *Id*. ¶ 9. Users can choose to stop using the "Virtual Try-On" tool at any time by navigating away from the "Virtual Try-On" iFrame to another URL or by closing their browser window. *Id*. ¶ 10. No data are preserved, stored, or transmitted when users cease using the Virtual Try-On tool and Estée Lauder cannot access it after the use of the "Virtual Try-On" tool. *Id*. The same technical details of the "Virtual Try-On" tool on the Too Faced website also apply to the Other Brands. *Id*. ¶ 11.

## ARGUMENT

### A.    Legal Standard

When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citation omitted). Once the defendant "has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). In a putative class action, specific jurisdiction is "assessed only with respect to the named plaintiffs," not unnamed class members. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020).

Dismissal pursuant to Rule 12(b)(3) is appropriate "where parties to a contract agreed to arbitrate disputes arising from that contract." *Everette v. Union Pac. R.R.*, 2006 U.S. Dist. LEXIS 68427, at *7 (N.D. Ill. Sept. 5, 2006); *see also* 9 U.S.C. § 4 (An "order directing that such arbitration proceed in the manner provided for in such agreement" should be issued where parties

agreed to arbitrate the relevant claims). When ruling on such a motion, the Court may consider materials outside the pleadings, like the arbitration agreement. *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) ("Under Rule 12(b)(3), the [] court was not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment.").

Assuming the court has jurisdiction and venue is appropriate, Rule 12(b)(6) then tests the sufficiency of the complaint. "To withstand a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Seventh Circuit has interpreted *Twombly* and *Iqbal* to mean that a plaintiff must "'provid[e] some specific facts' to support the legal claims asserted in the complaint," namely "enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).[1]

### B. The Court Cannot Exercise Personal Jurisdiction Over Estée Lauder and Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2) Is Proper

#### 1. The Court Lacks General Jurisdiction Over Estée Lauder

The Court lacks general jurisdiction because Estée Lauder is neither incorporated nor has its principal place of business in Illinois. The threshold for general jurisdiction is "high" and "demanding." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010); *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 914 (N.D. Ill. 2017). A court's general jurisdiction over a foreign

---

[1] *See also Jauquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) ("At the motion to dismiss stage, plaintiffs must set forth 'adequate factual detail to lift their claims from mere speculative possibility to plausibility.'"); *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) ("Raw conclusions are not entitled to a presumption of truth.") (citations omitted).

corporation is proper only where its "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014). "A corporation that operates in many places can scarcely be deemed at home in all of them," as otherwise "at home" would be synonymous with "doing business." *Id*. at 140 n. 20. Only a "limited set of affiliations with a forum" will suffice to establish general jurisdiction, with the "paradigm" bases for general jurisdiction being the "place of incorporation and principal place of business[.]" *Id*. at 137.

Here, Estée Lauder's place of incorporation is Delaware, its principal place of business is New York, and it has no special contacts with Illinois (nor has Plaintiff alleged any) that would render it "at home" in this jurisdiction. Compl. ¶ 2; Ex. A, Decl. ¶ 3. Thus, Estée Lauder is not "at home" in Illinois and is not subject to general jurisdiction. *See, e.g., Price v. Schlee & Stillman, LLC*, 2017 U.S. Dist. LEXIS 102279, at *5 (N.D. Ill. June 29, 2017).

### 2. The Court Lacks Specific Jurisdiction Over Estée Lauder

The Court further lacks specific jurisdiction over Estée Lauder because there are no purposeful contacts between Estée Lauder related to Plaintiff's claims. The U.S. Supreme Court has "made clear that (1) the relationship among the defendant, the forum, and the litigation must arise out of contacts that the 'defendant himself' creates with the forum state, and (2) the defendant will not be 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person, rather, there must be some 'purposeful availment' ***by the defendant***." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis added); *see also, e.g., Lexington Insurance Co. v. Hotai Insurance Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019). Therefore, for this Court to exercise personal jurisdiction over Estée Lauder consistent with due process, Estée Lauder's "***suit-related*** conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball,*

*Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (emphasis in original). Plaintiff's allegation that she visited Estée Lauder's Too Faced website while being a resident of Illinois will not suffice to satisfy this standard because "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 291 (2014). And nothing in the Complaint suggests Illinois-specific conduct, let alone on the part of Estée Lauder.

Importantly, the Seventh Circuit "has rejected the notion that an online merchant's operation of an interactive [web]site is sufficient to confer specific jurisdiction on it in every state from which it can be accessed[.]" *Gullen v. Facebook.com, Inc.*, 2016 U.S. Dist. LEXIS 6958, at **6-7 (N.D. Ill. Jan. 21, 2016); *see also Advanced Tactical*, 751 F.3d at 803 ("The interactivity of a website is . . . a poor proxy for adequate in-state contacts."). Simply put, operating an interactive website is not enough to confer specific jurisdiction. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011) ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way ***target*** the forum state's market") (emphasis in original).

Here, Estée Lauder has not engaged in any purposeful suit-related conduct in Illinois. Among other things, the Virtual Try-On tool found on its Too Faced brand's website allegedly accessed by Plaintiff is not specifically directed at Illinois nor is it specifically targeted at Illinois customers. Ex. A, Decl. ¶ 5. The Virtual Try-On tool is geography neutral, as it operates the same for any customer who chooses to access and engage with it, regardless of the customer's physical location. *Id*. Indeed, the conduct that Plaintiff complains of occurred only because Plaintiff elected to visit Estée Lauder's Too Faced brand's website and use the Virtual Try-On tool while living in Illinois. Plaintiff does not and cannot allege that Estée Lauder purposefully directed the Virtual Try-On tool at Illinois residents or "reached out" to Plaintiff or any other Illinois residents to solicit

application use. As this Court observed in dismissing another BIPA case for lack of personal jurisdiction involving "visual artist" technology to virtually try on makeup:

> That the technology was used in Illinois does not establish minimum contacts. Without evidence that [defendant] intended to avail itself of the right to do business in Illinois or purposefully aimed its conduct at Illinois, the use of [defendant's] technology in the forum is at most a random, fortuitous, or attenuated contact.

*Salkauskaite v. Sephora USA, Inc.*, 2020 U.S. Dist. LEXIS 94760, at *15 (N.D. Ill. May 30, 2020).

In short, the fact that Plaintiff allegedly accessed and used the Virtual Try-On tool in Illinois does not establish minimum contacts. On the face of her pleading, Plaintiff's claims lack the requisite jurisdictional nexus to sue Estée Lauder in Illinois and so dismissal for lack of personal jurisdiction is proper on this basis alone.[2] Here, moreover, Estée Lauder has also presented additional evidence supporting an additional independent basis to dismiss the Complaint for lack of personal jurisdiction. Specifically: (1) the Virtual Try-On tool is not hosted on and does not run on an Estée Lauder server or on a server that Estée Lauder controls; (2) the tool does not interface with any external Estée Lauder server; (3) the tool does not collect, store, obtain, or transmit any biometric data externally; and (4) no data are preserved, stored, or transmitted when users cease using the Virtual Try-On tool and Estée Lauder cannot access it after the use of the Virtual Try-On tool. Ex. A, Decl. ¶¶ 7-10. Thus, Plaintiff's alleged use of the Virtual Try-On tool entailed no contacts with Estée Lauder at all, no sharing of biometric data with Estée Lauder at all, and no conduct or purposeful availment by Estée Lauder directed to Illinois. Against this evidence, it becomes clear that none of Estée Lauder's alleged suit-related contact (as Plaintiff asserts in her

---

[2] *See, e.g., Gutierrez v. Wemagine.ai LLP*, 2022 U.S. Dist. LEXIS 14831, at **4-7 (N.D. Ill. Jan. 26, 2022) (dismissing two-count BIPA complaint for lack of personal jurisdiction); *Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 344 (N.D. Ill. 2021) (dismissing BIPA complaint for lack of personal jurisdiction because the plaintiff failed to demonstrate that defendant directed its suit-related actions at Illinois).

Complaint) creates a substantial connection with Illinois.[3] Plaintiff cannot establish a meaningful connection between Estée Lauder and Illinois, and thus her Complaint should be dismissed.

C. **The Court Should Dismiss the Complaint for Lack of Proper Venue Pursuant to Fed. R. Civ. P. 12(b)(3) Because Plaintiff's Claims Are Subject to Arbitration, or Compel Arbitration, and Any Such Arbitration Must Proceed on an Individual Basis**

Dismissal is also proper pursuant to Rule 12(b)(3) because Plaintiff's claims against Estée Lauder must be submitted to confidential binding arbitration in New York in accordance with the Terms and Conditions. Alternatively, the court should compel this case to individual arbitration.

Arbitration agreements governed by the Federal Arbitration Act (the "FAA") are presumed to be valid and enforceable. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth*, 473 U.S. 614, 626-27 (1985). Pursuant to the FAA, arbitration must be compelled where: (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) a party has refused to proceed to arbitration in accordance with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The party seeking to avoid arbitration bears the burden of showing that the arbitration clause is invalid or does not encompass the claims at issue. *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 717 (N.D. Ill. 2014).

First, a valid agreement to arbitrate exists here. Plaintiff admits that she visited the Too Faced website and used the Virtual Try-On tool on December 30, 2021. Compl. ¶ 32. As such, she was subject to Too Faced's Terms and Conditions, which clearly provide that "[b]y accessing or using the Site, you are acknowledging that you have read, understand, and agree, without limitation or qualification, to be bound by these Terms of Website Use. IF YOU DO NOT AGREE TO THE

---

[3] *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

TERMS OF WEBSITE USE, YOU MAY NOT USE THE SITE." Terms & Conditions, https://www.toofaced.com/terms-conditions (last visited May 27, 2022) (the "Website T&C").

Second, the dispute clearly falls within the scope of the arbitration provision. Section 14 of Too Faced's Terms and Conditions states (in capitalized lettering) that "…ANY DISPUTE RELATING IN ANY WAY TO YOUR USE OF THE SITE OR THESE TERMS AND CONDITIONS … SHALL BE SUBMITTED TO CONFIDENTIAL BINDING ARBITRATION IN NEW YORK AND YOU AGREE TO SUBMIT YOURSELF TO THE JURISDICTION AND PROCEEDINGS THEREOF." *Id.* (capitalization in original). Plaintiff's allegations plainly fall within this broad provision. Plaintiff alleges that her purported BIPA injury arises ***solely*** out of her own decision to access Too Faced's website and use the Virtual Try-On tool. Compl. ¶¶ 32-36.

Third, Plaintiff has refused to proceed to arbitration under the Terms and Conditions, choosing instead to file this suit in state court, requiring Estée Lauder to properly remove this case.

Finally, to the extent that the Court compels arbitration, it must proceed on an individual basis. The Supreme Court has repeatedly held that contractual waivers of the right to participate in class arbitration are enforceable.[4] And here, Plaintiff waived her right to assert any claims on behalf of a putative class. Too Faced's website's Terms and Conditions provide (in all capitalized lettering) "YOU AGREE THAT YOU MAY BRING CLAIMS AGAINST US ONLY IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." Website T&C (capitalization

---

[4] *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-52 (2011) (finding the FAA preempts California law holding class arbitration waivers unconscionable); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify *with whom* the parties choose to arbitrate their disputes." (citations omitted) (emphasis in original)); *DirecTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468-69 (2015) (affirming that class action waivers must be enforced under the FAA according to *Concepcion*).

in original). Accordingly, pursuant to the express terms of the relevant arbitration agreement, Plaintiff must be ordered to proceed with arbitration on an individual basis.[5]

**D.      Even If the Court Determines That It Has Personal Jurisdiction Over Estée Lauder (It Does Not) and Venue is Appropriate (It Is Not), Dismissal Is Appropriate Under Rule 12(b)(6) Because Plaintiff Does Not and Cannot State a Plausible Claim for Relief**

Even if the Court finds that its exercise of personal jurisdiction over Estée Lauder is proper (and it should not), it must still dismiss Plaintiff's Complaint because Plaintiff's allegations fail to state a plausible claim for relief pursuant to Rule 12(b)(6). The Complaint tenders only "naked assertions devoid of further factual enhancement," without including any specific allegations as to what Estée Lauder did to purportedly collect or possess Plaintiff's biometric data. *Iqbal*, 556 U.S. at 678; *see, e.g.*, Compl. ¶¶ 35-36, 39-40, 48, 50-52, 60, 62-63. Moreover, "repeatedly alleg[ing] that defendant 'collected' [Plaintiff's and unspecified others'] biometric data without alleging how, when, or any other factual detail," is conclusory and insufficient to support a claim upon which relief can be granted. *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020). Plaintiff's Complaint is thus rife with deficiencies which necessitate dismissal.

First, Plaintiff's allegations about how the Virtual Try-On tool operates do not pass muster. Plaintiff asserts, upon information and belief, that the Virtual Try-On tool operates "by capturing the facial geometry of users' photos, regardless of whether the photo is taken by web or phone camera while using the Virtual Try-On tool, uploaded to the tool, or captured via a live web or phone camera feed." Compl. ¶ 23. However, the only factual support that Plaintiff offers for this allegation is a quote from a completely unrelated company, called Modiface, discussing Modiface's own product that has nothing to do with the Virtual Try-On tool that Plaintiff alleges

---

[5] *See, e.g., DirecTV*, 136 S. Ct. at 471 (enforcing the arbitration agreement and class action waiver); *AT&T Mobility*, 563 U.S. at 336 ("[T]he FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures.")

she used on the Too Faced brand website. *Id.* Plaintiff does nothing to allege that Modiface's technology is the same technology that Estée Lauder's brands' websites purportedly uses. Instead, Plaintiff baselessly and in conclusory fashion alleges that Modiface is a "similar developer" and provides a link to Modiface's website. Plaintiff offers no link between Modiface's practices and the Virtual Try-On tool on the Too Faced website (or any other Estée Lauder brand website). Plaintiff does not even allege that the Virtual Try-On tool is the same technology that Modiface implements. Plaintiff's failure to allege that the Virtual Try-On tool is comprised of technology that captures a user's facial geometry necessitates dismissal.

Second, Plaintiff alleges no facts showing that Estée Lauder took any action in violation of BIPA. Sections 15(a) and 15(c) through 15(e) of BIPA apply only to entities that possess a plaintiff's biometric identifiers or information, and Section 15(b) applies only to entities that "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(a)-15(e). Plaintiff alleges no facts supporting the conclusory assertions set forth at Compl. ¶¶ 32, 35-36, and 38 or demonstrating that Estée Lauder in fact took affirmative steps to capture, collect, receive, obtain, or store Plaintiff's biometric data or possess it. To the contrary, and in fact, Plaintiff voluntarily ran the tool without Estée Lauder obtaining, possessing, or collecting any biometric data. That is insufficient to state a claim for violation of BIPA. *See Heard*, 440 F. Supp. 3d at 966 (dismissing claim under Section 15(b) where plaintiff failed to allege defendant took an "active step" to "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data); *see also Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285-86 (N.D. Ill. 2019). Plaintiff's conclusory assertions, with no supporting factual allegations, cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678-79.

Additionally, Plaintiff fails to allege facts showing that Estée Lauder's purported conduct

was negligent, reckless, or intentional, as required to state a claim for statutory damages under BIPA. *See* 740 ILCS 14/20. Plaintiff has alleged no facts from which this Court could infer that a purported BIPA violation satisfies any of the statutory thresholds for damages, as Plaintiff has pled nothing regarding Estée Lauder's alleged degree of fault, recklessness, or intentionality. The Complaint merely states that "Plaintiff and Class members are entitled to liquidated damages [pursuant to BIPA]." Compl. ¶ 53. This legal conclusion is insufficient to withstand dismissal.[6]

### E. Plaintiff Lacks Standing To Sue With Respect to Any Alleged BIPA Violations on Websites Other Than Too Faced

Plaintiff also lacks standing to sue on behalf of users who visited other Estée Lauder brand websites, *i.e.*, any brand website other than the Too Faced website. Should any claim be permitted to proceed (and it should not), it should be limited to claims relating only to the Too Faced website.

It is settled that in the putative class context:

> [A] named plaintiff cannot acquire standing to sue by bringing [her] action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.

*Payton v. Cnty. Of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (internal quotation marks and citations omitted). Simply put, a named plaintiff only has standing to pursue a claim on behalf of similarly situated individuals with the same purported injury.[7] Here, however, Plaintiff's Complaint seeks to establish a class relating to a variety of different websites. Compl. ¶ 41. Plaintiff lacks standing to maintain a putative class action against Estée Lauder for any conduct relating to any of the

---

[6] *See Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) ("A conclusory allegation of recklessness, however, is insufficient to defeat a motion to dismiss."); *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 889 (N.D. Ill. 2014) ("Absent any facts to support his assertion that the bullet was defective, Plaintiff has not shown that his negligence claim against [defendant] is 'plausible, rather than merely speculative.'").

[7] *See Young v. Lehigh Corp.*, 1989 U.S. Dist. LEXIS 11575 at *19 (N.D. Ill. Sep. 26, 1989) ("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'").

websites identified in her class definition other than toofaced.com, the only website she claims she personally visited and purportedly caused her alleged injury. *See id.* ¶ 32.

Several courts in this Circuit have concluded that a named plaintiff cannot maintain claims either for herself or on behalf of a class for products that she did not purchase.[8] Although there is no "purchase" at issue in this case, similar logic should apply here for purposes of analyzing Article III standing. Plaintiff does not allege anywhere in the Complaint that she visited maccosmetics.com, smashbox.com, esteelauder.com, or bobbibrowncosmetics.com or that she used the Virtual Try-On tool on any of these websites. Nor has Plaintiff alleged that the Virtual Try-On tool is substantially similar to the Virtual Try-On tool on the Too Faced website. Thus, Plaintiff cannot allege that the suffered an injury relating to the use of the Virtual Try-On tool on these websites and is not capable of asserting claims on behalf of a putative class. Courts in other districts have limited claims in similar contexts. *See, e.g., Reed v. NBTY*, 2014 U.S. Dist. LEXIS 197398, at *18 (C.D. Cal. Nov. 18, 2014) ("It is undisputed that neither [plaintiffs] viewed the labels … or visited Defendants' websites prior to purchasing the Products. Accordingly … plaintiffs do not have standing to pursue claims ….").

## CONCLUSION

For the foregoing reasons, Estée Lauder respectfully requests that this Court grant Estée Lauder's motion and dismiss Plaintiff's Complaint in its entirety, with prejudice.

---

[8] *See, e.g., Flaherty v. Clinique Laboratories LLC*, 2021 U.S. Dist. LEXIS 219455, at *15 (N.D. Ill. Nov. 15, 2021) (dismissing plaintiff's claims to the extent plaintiff sought relief for products she did not purchase); *Brodsky v. Aldi Inc.*, 2021 U.S. Dist. LEXIS 185436, at *7 (N.D. Ill. Sept. 28, 2021) (dismissing claims related to decaffeinated coffee where plaintiffs had purchased other coffee products); *Porter v. NBTY, Inc.*, 2016 U.S. Dist. LEXIS 163352, at **8-9 (N.D. Ill. Nov. 28, 2016) ("Plaintiffs cannot establish an injury-in-fact caused by products plaintiffs did not purchase and so there is no case or controversy with respect to these products."); *Pearson v. Target Corp.*, 2012 U.S. Dist. LEXIS 187208, at *4 (N.D. Ill. Nov. 9, 2012) (concluding that plaintiff lacked Article III standing to bring claims related to products that he had not purchased).

Dated: May 27, 2022

/s/ Gregory E. Ostfeld
_____

Gregory E. Ostfeld
Christopher A. Mair
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
Email: ostfeldg@gtlaw.com
Email: mairc@gtlaw.com

Sylvia E. Simson (*Pro Hac Vice forthcoming*)
Daniel I.A. Smulian (*Pro Hac Vice forthcoming*)
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9200
Email: simsons@gtlaw.com
Email: smuliand@gtlaw.com

*Attorneys for The Estée Lauder Companies, Inc.*

## CERTIFICATE OF SERVICE

I, Christopher A. Mair, an attorney, hereby certify that on May 27, 2022, I caused the foregoing **DEFENDANT THE ESTÉE LAUDER COMPANIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered parties.

*Christopher A. Mair*
Christopher A. Mair