**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MORGAN KUKOVEC,** INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No.: 1:22-cv-01988 |
| Plaintiff, | Judge: Hon. Manish S. Shaw |
| **v.** | Magistrate Judge Young B. Kim |
| **THE ESTÉE LAUDER COMPANIES INC.,** | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Morgan Kukovec ("Ms. Kukovec"), by and through her undersigned counsel, hereby submits her Response to Defendant's Motion to Dismiss Plaintiff's Complaint, and in doing so, states as follows:

**INTRODUCTION**

Despite admittedly advertising and selling cosmetics in Illinois online and in brick-and-mortar stores and using a Virtual Try-On tool as part of those advertising and sales efforts, Estée Lauder asks the Court to hold it lacks the minimum contacts with Illinois to be subject to the jurisdiction of courts in this State. Estée Lauder further seeks to enforce an arbitration agreement Plaintiff never saw and never had constructive notice of. It asks the Court to apply a novel, heightened pleading standard. And it asks the Court to prematurely rule on the scope of Plaintiff's proposed class definition based only on the pleadings. For all the reasons detailed below, the Court should reject all these arguments and deny Estée Lauder's Motion to Dismiss in its entirety.

1

## ARGUMENT

### A.      Estée Lauder purposefully availed itself of this Court's jurisdiction.

Estée Lauder seeks dismissal of Plaintiff's BIPA claims pursuant to Fed. R. Civ. P. 12(b)(2), claiming the Court does not have personal jurisdiction over it. (Dkt. 31 at 6). Specific jurisdiction lies when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Id.* Estée Lauder purposefully directed its activities at Illinois consumers, Plaintiff's and proposed class members' injuries arise directly from those activities, and it would offend notions of fair play and substantial justice *not* to exercise jurisdiction over Estée Lauder.

*Purposeful availment*. Estée Lauder purposefully avails itself of the privilege of conducting business in Illinois. It admits that it sells cosmetics in this State, and the Complaint alleges that it does so both online and in brick-and-mortar retail shops and drug stores, reaching consumers in every county in Illinois. (Dkt. 31, Exhibit A, ¶ 5; Dkt. 1, Exhibit A, ¶¶ 3, 16-17). And it employs individuals in Illinois to target and sell to the Illinois cosmetics market. In fact, as of June 13, 2022, Estée Lauder had at least 14 active job postings open on Indeed.com alone, for Illinois retail sales positions selling its products to the Illinois cosmetics market. (Exhibit A, Indeed Job Postings (June 13, 2022); *see also* Exhibit B, *Kohl v. Estee Lauder*, 12. IL.W.C. 20950 (Ill. Indus. Comm'n Aug. 1, 2016)) (workers' compensation case by an Illinois employee of Estée Lauder).

2

Thus, Estée Lauder's "contacts with this state include business relationships with Illinois employers, sales and shipments of products, and long-running services." *King v. PeopleNet Corp.*, No. 21 CV 2774, 2021 WL 5006692, at *7 n.10 (N.D. Ill. Oct. 28, 2021) (Shah, J.).

**Link between this litigation and Estée Lauder's contacts with Illinois**. The Virtual Try-On tool that injured Plaintiff is closely tied to Estée Lauder's "forum-related activities"—the sale of cosmetics. *Tamburo,* 601 F.3d at 702. All that's required is "'a connection between the forum and the specific claims at issue.'" *King*, 2021 WL 5006692, at *7 (quoting *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020)). There is such a connection here.

The Virtual Try-On tool's only purpose is to market and sell Estée Lauder's cosmetic products—it exists to allow consumers to virtually try on products so they can choose which products to buy. And Estée Lauder is happy to ship its products to Illinois consumers who buy cosmetics after accessing the Virtual Try-On tool or sell those products to them in stores. Indeed, the website screenshots depicted in the Complaint show icons for "add to cart," "add to bag," and "send as gift," all of which are presented to consumers while accessing the "Virtual Try-On" tool. (Dkt. 1, Exhibit A, ¶¶ 19-25). The Virtual Try-On tool's purpose is sales, and Estée Lauder's forum-related activities are sales. The seamless connection between Estée Lauder's marketing and sales activity in Illinois and this litigation is more than sufficient to establish the Court's personal jurisdiction here. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026-30 (2021) (a showing of minimal contacts doesn't require "a strict causal relationship between the defendant's in-state activity and the litigation").

Estée Lauder asserts that the Virtual Try-On tool "does not run on an Estée Lauder server or on a server that Estée Lauder controls" (and, apparently, instead runs on its vendor's servers), (Dkt. 31 at 9), but that doesn't break the tight link between Estée Lauder's in-forum conduct and

this litigation. As this Court recently observed in denying a BIPA defendant's motion to dismiss, the fact that non-parties "played a role in" creating contacts between a defendant's technology and Illinois "doesn't make those contacts independent or attenuated." *King*, 2021 WL 5006692, at *7. Estée Lauder "itself set the system up this way," and its choice to "rel[y] on third parties . . . to deploy its technology does not sever the relationship between" Plaintiff's claims and Estée Lauder's "contacts with the forum." *Id.* (quotation marks omitted).

Estée Lauder's reliance on *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016), is misplaced. In *Gullen*, the district court found an insufficient connection between the defendant's purposeful contact with Illinois and the conduct at issue in the litigation. The defendant, Facebook, was registered to do business in Illinois and had a sales and advertising office here, but the court found that these targeted activities had "no relationship" to the suit, a BIPA action arising from Facebook's facial-recognition technology. *Id.* at *2. That fact pattern is worlds apart from the facts here. Facebook provided its facial-recognition technology to all Facebook users and did not use the technology to market or sell any products. *Id.* Here, as described above, Estée Lauder's operation of the Virtual Try-On tool, and its resulting use of consumer biometrics, is part and parcel of its campaign to market and sell cosmetics to Illinois residents. This direct link distinguishes this case from cases like *Gullen* in which a plaintiff attempts to establish personal jurisdiction based only on "operation of an interactive site." *Id.*

***Fair play and substantial justice***. Exercise of personal jurisdiction over Estée Lauder here would not offend traditional notions of fair play and substantial justice. On this factor, "[t]he following factors are relevant: the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and

the shared interest of the several States in furthering fundamental substantive social policies." *Tamburo*, 601 F.3d at 709 (quotations omitted).

All these factors favor personal jurisdiction here. To begin, Estée Lauder does not and cannot point to any special burden it, a giant corporation, would endure by litigating this case here, and it was foreseeable that it might have to defend itself here. Further, Illinois has a strong interest in adjudicating this dispute because the statute Estée Lauder is accused of violating "is an Illinois statute and stems out of [its] contact with Illinois residents." *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1105 (N.D. Ill. 2015). Additionally, "because the Plaintiff is a private Illinois resident[,] there is a strong interest in adjudicating the matter locally." *Id.* And Estée Lauder offers its cosmetic products to citizens of Illinois and ships those products "directly to their customers." *Id.* Thus, declining jurisdiction over a large corporation that targets Illinois consumers, offers a tool to them in their homes in Illinois in furtherance of the company's marketing efforts, and then offers to sell and ship its products to their homes in Illinois or sell them in stores in Illinois would *offend* traditional notions of fair play and substantial justice, not further these aims.

### B. Venue is proper, and Plaintiff's claims are not subject to arbitration or limited to individual claims.

Estée Lauder argues that the case must be dismissed for lack of proper venue because Plaintiff's claims are subject to an arbitration agreement that requires claims to be brought on an individual basis. (Dkt. 31 at 10-11). A party seeking to compel arbitration must establish the existence of a binding and enforceable arbitration agreement. *Melvin v. Big Data Arts, LLC*, 553 F. Supp. 3d 447 (N.D. Ill. 2021). No enforceable agreement exists here because Plaintiff never agreed to be bound by a "browsewrap" agreement buried under a small hyperlink in the middle of a long list of other hyperlinks at the bottom of Estée Lauder's website and accessible only by scrolling.

5

Estée Lauder's request for dismissal relies entirely on the arbitration clause in its Terms and Conditions. Estée Lauder fails to meet its burden to establish a binding arbitration agreement because it omits any explanation as to how these terms were presented to Plaintiff. Further, judicially noticeable evidence shows that the Too Faced website never presented her with those Terms and Conditions before or during her use of the Virtual Try-On tool. Plaintiff was never required or prompted to click "agree" or acknowledge her assent to the Terms and Conditions to access the tool. The only notification of any purported terms, conditions, or agreements provided to Plaintiff when using the Virtual Try-On tool was a link to a "privacy policy," which does not contain an arbitration agreement. (Dkt. 1, Exhibit A, ¶ 25). Even this notification did not solicit Plaintiff's agreement to any terms; a line of text above the "Live Camera" button just states, "For more information about privacy practices, please read our Privacy Policy." *Id.*

The only way for a consumer to find the Terms and Conditions on the Too Faced website is to scroll all the way down to the bottom of any page (including the Virtual Try-On pages).[1] On the bottom right corner, a link to the Terms and Conditions lies in the middle of a list of 16 links to other pages on the website and 6 links to Too Faced social media websites.

---

[1] *See, e.g.*, *Find your perfect makeup matches with our virtual try-on tool!*, Toofaced.com, https://www.toofaced.com/virtual-try-on?gclid=Cj0KCQjwhqaVBhCxARIsAHK1tiOPil-a-8aB_TSTVKhu1z8m9Mh25sz6wBl0-8Euo_TtFFVPiZDdlSYaAjo5EALw_wcB&gclsrc=aw.ds (last visited June 15, 2022). This link and the screenshot below are taken from the Too Faced website as it appears currently, but the site was the same in all relevant respects in December 2021 when Plaintiff visited it and used the Virtual Try-On tool. An archived version of the site as it existed at that time can be viewed at https://web.archive.org/web/20211104151201/https://www.toofaced.com/virtual-try-on.



*Screenshot of Too Faced website when scrolled all the way to the bottom*

This passive link is the only notice of any Terms and Conditions applicable to the Too Faced site, and there is no notice anywhere on the Too Faced website that use of the site manifests assent to the Terms and Conditions.

Thus, Estée Lauder offers its Terms and Conditions in the form of a "browsewrap" agreement, where "notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink." *Hussein v. Coinabul, LLC*, No. 14 C 5735, 2014 WL 7261240, at *2 (N.D. Ill. Dec. 19, 2014) (quotation marks omitted). "In order for a browsewrap agreement to be enforced, the user must have had actual or constructive knowledge of the website's terms and conditions." *Id.* Estée Lauder doesn't claim that Plaintiff had actual knowledge of the Terms and Conditions, so the only question is whether she had constructive notice. "Constructive notice depends on the design and content of the website itself," *id.*, and that design must "provide[] reasonable notice of

the terms of the contract," *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 901 (S.D. Ill. 2012).

Estée Lauder's choice to hide its arbitration provision in its Terms and Conditions, which are in turn hidden in a list of hyperlinks at the bottom of the Too Faced website, ensured that Plaintiff (or any other consumer) did not receive reasonable notice of those terms. "Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). This Court should likewise refuse to enforce the Terms and Conditions. *See Hussein*, 2014 WL 7261240, at *3 ("Because the forum selection clause in question can only be found in Coinabul's Terms of Service and because these terms are hidden behind a hyperlink that is tucked away at the bottom of its website, Plaintiff lacked constructive notice of Coinabul's Terms of Service."); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 789 (N.D. Ill. 2011) (denying motion to compel arbitration where defendant failed to establish that plaintiffs "ever viewed the enrollment web pages containing the Terms and Conditions upon which Defendants rely" or accepted those terms).[2]

## C.    The Complaint states claims under BIPA.

Estée Lauder also moves to dismiss Plaintiff's claim for failure to state a claim. (Dkt. 31 at 12). At the pleading stage, a "pleader's responsibility" is merely to "state a claim to relief that is

---

[2] *See also Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 WL 507584, at *6 (N.D. Ill. Feb. 5, 2015), *aff'd*, 817 F.3d 1029 (7th Cir. 2016) (collecting cases and observing that "an increasing number of courts in both federal district and appellate levels require an explicit text informing users that they are giving their assents to agreements when they navigate websites"); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1064-65 (D. Nev. 2012) (court invalidated browsewrap agreement where a website did not explicitly direct users to the "Terms of Use" hyperlink appearing between the middle and bottom of every page).

plausible on its face." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). In ruling on a motion to dismiss, courts construe the complaint in the light most favorable to the plaintiff, with all well pleaded allegations taken as true, and all reasonable inferences construed in plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d, 1074, 1083 (7th Cir. 2008).

Estée Lauder argues the Complaint fails to state a BIPA claim because it does not explain precisely "how" the Virtual Try-On technology works or "allege that the Virtual Try-On tool is comprised of technology that captures a user's facial geometry." (Dkt. 31 at 13). Wrong on both fronts. As to how the technology operates, the Complaint alleges that the application uses "facial-geometry scans" to "identify the shape and features of the user's face in order to accurately overlay the virtual makeup product onto the image provided." (Dkt. 1, Exhibit A, ¶ 23). As to Estée Lauder's second argument, the Complaint alleges that the Virtual Try-On tool "operates by capturing the facial geometry of users' photos." *Id.*

Estée Lauder appears to be asking the Court to apply a novel, ultra-heightened pleading standard that requires Plaintiff to engage in a lengthy technical explanation of how the Virtual Try-On tool works and plead in granular detail how Estée Lauder captures, collects, or possesses biometrics. (*See, e.g.*, Dkt. 31 at 12 (calling for additional "factual support" as to how the technology works)). This is not required at the pleading stage. Again, the Complaint alleges that the Virtual Try-On technology captures and uses facial geometry, a protected biometric identifier, to overlay the virtual cosmetic products on the user's face. (Dkt. 1, Exhibit A, ¶ 23). Taking Plaintiff's allegations as true, which the Court is required to do at the pleading stage, the tool can't work without "capturing" and "collecting" user biometrics, because this capture and collection enables the tool to display the virtual product on the user's image. *Id.* And to "collect" is "to bring

9

together into one body or place"[3]; the Virtual Shade Matching tool can't operate without bringing together a user's facial measurements into one place (the facial-geometry map it creates).

That is enough to state a claim. *See Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 840 (N.D. Ill. 2021) (explaining that at the pleading stage, a "plaintiff need not show in granular detail the precise means by which users' biometric data travelled" from the devices collecting the biometric data to defendant); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019) ("Plaintiff presents 'a story that holds together' by alleging that [defendant] collected such information through its customer's use of [defendant's] system; nothing more is needed under federal notice pleading standards."); *Pruitt v. Par-A-Dice Hotel Casino*, No. 1:20-CV-1084-JES-JEH, 2020 WL 5118035 at *3 (C.D. Ill. Aug. 31, 2020) (defendants were on notice of basis for BIPA claims where plaintiff alleged that defendant conducted facial geometry scans using security cameras without consent).

The precise technical details as to how Estée Lauder's technology operates is within its exclusive possession and control, so Plaintiff pleads these facts upon information and belief. "[A]llegations premised on 'information and belief' are permissible where the pleadings concern matters peculiarly within the knowledge of the defendants." *CZS Holdings LLC v. Kolbe*, No. 20 C 6886, 2021 WL 1837385, at *3 (N.D. Ill. May 7, 2021) (internal quotations omitted). This is especially true in a BIPA case: It would make no sense to impose a requirement that a plaintiff plead specific facts regarding an entity's capture, collection, and possession of the plaintiff's biometrics when the entity's failure to comply with BIPA's requirement that the company inform consumers about what it does with their biometrics created the inability to do so.

---

[3] *Collect (verb)*, Merriam-Webster, https://www.merriam-webster.com/dictionary/collect (last visited June 16, 2022).

Estée Lauder's claim that Plaintiff failed to plead Estée Lauder "took affirmative steps" to capture Plaintiff's biometric data or possess it is untrue. (Dkt. 31 at 13).[4] The Complaint alleges that Estée Lauder offered the Virtual Try-On tool on its websites, that consumers were required to give the tool access to their images on their webcams or phones to use the tool, and that Estée Lauder uses the tool and the facial geometry it captures to market its products to consumers by displaying an accurate representation of what Estée Lauder's products will look like on their faces. (Dkt. 1, Exhibit A, ¶¶ 16-23). It strains credulity to assert that implementing a tool on a website that actively creates facial-geometry profiles from consumers, inviting consumers to use that tool, and then requiring them to submit their biometrics as a condition to operate the technology are not "affirmative steps" taken to collect biometrics. *See Naughton v. Amazon.com, Inc*., No. 20-CV-6485, 2022 WL 19324, at *3 (N.D. Ill. Jan. 3, 2022) (plaintiff sufficiently alleged "active step" by defendant where defendant "collect[ed] the data for its own use" and "imposed the collection of biometric data] requirement" on plaintiff and other workers "as a condition of their employment").

Estée Lauder further argues that Plaintiff failed to allege facts showing that Estée Lauder's conduct was negligent, reckless, or intentional, or from which the Court could infer such degree of fault. (Dkt. 31 at 13-14). Wrong again. As long as a plaintiff provides "details sufficient to render a claim plausible," a defendant's state of mind "may be pleaded generally." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013). The Complaint alleges that Estée Lauder sells cosmetics in every county in Illinois, operates an application on its websites that process consumer biometrics, and includes a prominent pop-up reference to its "Privacy Policy"

---

[4] To be clear, Plaintiff does not concede that BIPA contains an "affirmative step" requirement. There is no such requirement in BIPA's statutory text, and Estée Lauder cites no binding authority reading it into the statute. But because the Complaint pleads that Estée Lauder took several "affirmative steps" to capture and collect consumers' facial geometry on its website, the Court does not need to decide in this case whether such an unenumerated requirement exists.

when a consumer is using the Virtual Try-On tool. (Dkt. 1, Exhibit A, ¶¶ 16-30). Yet Estée Lauder, a large, sophisticated business entity, fails to comply with a widely publicized, heavily litigated Illinois law governing entities with control over others' biometrics. *Id.* ¶ 38. Any of these states of mind, including intentionality and recklessness, can be reasonably inferred from this course of conduct. Indeed, under Illinois law, "violation of a statutory standard of care is prima facie evidence of negligence." *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004). This inference is all that's needed at the pleading stage.

### D. Estée Lauder conflates standing with the requirements of class certification.

By arguing that Plaintiff lacks "standing" to pursue claims on behalf of class members who accessed the VTO on Estée Lauder websites other than the Too Faced site (Dkt. 31 at 14), Estée Lauder tries to recast a premature challenge to the scope of the class proposed in the Complaint as a standing challenge. That challenge should be addressed under Rule 23 at class certification, not under Article III on the pleadings.

The Seventh Circuit has repeatedly warned against "conflating the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." *Payton v. Cty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). That court's decision in *Arreola v. Godinez* is instructive. In that case, a district court had concluded that the named plaintiff "lacked standing to pursue injunctive relief" on behalf of proposed class members—some of whom were current inmates at a jail alleged to be engaging in unlawful conduct—because he was no longer housed at the jail. 546 F.3d 788, 795 (7th Cir. 2008). The appeals court held that the district court improperly analyzed the issue because the problem was "not one of standing." *Id.* The named plaintiff satisfied Article III's requirements because he showed a concrete injury that was traceable to the jail's conduct and redressable by a favorable judgment. *Id.* He therefore satisfied the

prerequisite requirement of filing suit, so the standing inquiry ended and the focus shifted to whether he satisfied Rule 23's requirements. *See id.* at 799 (analyzing whether the named plaintiff could seek injunctive relief on behalf of current inmates under Rule 23(a)'s adequacy requirement).

Here, Plaintiff's allegations concerning her use of the Too Faced website and Estée Lauder's unconsented use of her facial geometry satisfy the Article III "prerequisite to filing suit," *Arreola*, 546 F.3d at 795 (emphasis omitted), and the standing inquiry is done. Estée Lauder's arguments concerning the scope of the class should be addressed at class certification, not on the pleadings. *See* 1 Newberg on Class Actions § 2:6 (5th ed. 2021) ("[W]hen a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class."); *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 409 (N.D. Ill. 2021) ("Caterpillar's arguments about the mismatch between the named plaintiffs' alleged injuries and those of the class members raise Rule 23 issues that logically precede Article III standing."). The Court should therefore reject Estée Lauder's effort "to inject class certification issues into the standing inquiry." *Caterpillar*, 522 F. Supp. 3d at 409.

Second, even if Estée Lauder's arguments are treated as "standing" challenges, they don't hold water. A minority of federal courts have framed challenges, like Estée Lauder's, to the scope of the proposed class as an issue of standing. *See Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (treating pleadings challenge to scope of class definition as a standing issue); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (same). But those courts only required that the named plaintiff "be part of the class and

possess the same interest and suffer the same injury as the class members." *Fox*, 977 F.3d at 1046 (internal quotation marks omitted).

Here, Plaintiff alleges that all class members (including herself) hold the same interest and suffered the same injury because all the Estée Lauder websites used the same technology (the Virtual Try On tool), unlawfully collected consumers' biometrics without providing the proper notice, and operated despite Estée Lauder's failure to obtain informed consent from consumers or publish a BIPA-compliant retention policy. Estée Lauder fails to identify any actual differences between those sites or consumers' experiences with those sites that would make Plaintiff's interest or her injury materially different from those of all class members. To the contrary, the declaration attached to Estée Lauder's Motion confirms Plaintiff's allegations that Estée Lauder's Virtual Try-On Tool is the same on each of its branded websites. (Dkt. 31, Exhibit A). It states: "All statements made in paragraphs 6 through 11 above are also true with respect to the websites of the other brands." (*Id*. at ¶ 11). Thus, the fact that consumers used different web addresses to reach the Virtual Try-On tool is an artificial distinction irrelevant to standing.[5]

The Supreme Court's decision in *Gratz v. Bollinger*, 539 U.S. 244 (2003), is directly on point. There, a student challenged a university's use of racial preferences in undergraduate admissions. *Id.* at 244. The named plaintiff was a prospective transfer student attending another school, but he sought to represent a class of both transfer students and prospective freshmen. *Id.* at 262. The Court rejected the university's argument that the named plaintiff lacked standing to

---

[5] *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (plaintiff had standing to represent class of medical plan beneficiaries, even though he and some class members participated in different plans, where he alleged that the defendant used the same unlawful methodology to determine benefits in each plan); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) ("So the question of standing is not: Are there differences between the claims of the class members and those of the class representative? Rather, the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?").

represent freshmen, observing that it did not need to decide whether the question was one of standing or Rule 23 adequacy because the requirement was "clearly satisfied" either way. *Id.* at 263. The Court explained that the distinction drawn by the university between transfer applicants and freshmen applicants was not material to standing because that difference "d[id] not implicate a significantly different set of concerns than d[id] its use of race in undergraduate freshman admissions." *Id.* at 265. Put differently, despite some factual variations in class members' experiences, they all had the "same set of concerns" as the named plaintiff because they suffered the same harm from the same defendant. *Id.* at 267. Thus, there was a "sufficient relationship between the named plaintiffs' injury and the class's." 1 Newberg on Class Actions § 2:6 (5th ed. 2021) (discussing *Gratz*).

Like the plaintiff in *Gratz*, Plaintiff has the "same set of concerns" as all class members. Any minor differences in how those class members found their way to Estée Lauder's Virtual Try-On tool are thus irrelevant to the standing analysis.

E. **If the Court finds Plaintiff's Complaint deficient in any manner, she should be granted leave to amend and conduct jurisdictional discovery**

In the alternative, if the Court grants Estée Lauder's motion to dismiss in any respect, it should grant Plaintiff leave to file an amended complaint and conduct jurisdictional discovery. Granting leave to amend is "especially advisable when such permission is sought after the dismissal of the first complaint. Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (emphasis in original).

**CONCLUSION**

For all the foregoing reasons, the Court should deny Estée Lauder's Motion to Dismiss.

15

Respectfully submitted,

Dated: June 17, 2022

By: <u>Elizabeth C. Chavez, Esq.</u>
Elizabeth C. Chavez, Esq. (6323726)
Peter L. Currie, Esq. (6281711)
Bret K. Pufahl, Esq. (6325814)
Kathleen C. Chavez, Esq. (6255735)
Robert Foote, Esq. (3124325)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 W. State Street, Suite 200
Geneva, IL 60134
Tel. No.: (630) 232-7450
Fax No.: (630) 232-7452
Email: ecc@fmcolaw.com
      plc@fmcolaw.com
      bkp@fmcolaw.com
      kcc@fmcolaw.com
      rmf@fmcolaw.com

Hassan A. Zavareei
hzavareei@tzlegal.com
Glenn E. Chappell
gchappell@tzlegal.com
Allison W. Parr
aparr@tzlegal.com
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, DC 20036
(202) 973-0900 (*telephone*)
(202) 973-0950 (*facsimile*)

COUNSEL FOR THE PLAINTIFF AND THE
PUTATIVE CLASS

## CERTIFICATE OF SERVICE

I, Elizabeth C. Chavez, an attorney, hereby certify that on June 17, 2022, I caused the foregoing **RESPONSE TO DEFENDANT'S MOTION TO DISMISS** to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered parties.

*s/Elizabeth C. Chavez, Esq.*
Elizabeth C. Chavez