**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **MORGAN KUKOVEC**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-01988 |
| Plaintiff, | Hon. Manish S. Shah |
| v. | Magistrate Judge Young B. Kim |
| **THE ESTÉE LAUDER COMPANIES INC.**, |  |
| Defendant. |  |

**DEFENDANT THE ESTÉE LAUDER COMPANIES, INC.'S REPLY
<u>IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER ESTÉE LAUDER............................. 2

      A.    Plaintiff Has Conceded That This Court Lacks General Jurisdiction ...................... 2

      B.    The Court Lacks Specific Jurisdiction Because Plaintiff Has Failed to Establish That Estée Lauder's Purported Suit-Related Conduct Creates a Substantial Connection with Illinois .................................................................................. 2

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF IS BOUND BY THE TERMS AND CONDITIONS' ARBITRATION AND CLASS ACTION WAIVER PROVISIONS ........................................................................................... 6

III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM UNDER BIPA .......................................................... 10

      A.    Plaintiff Has Identified No Non-Conclusory Factual Allegations to Establish That Estée Lauder Collected or Possessed Her Facial Geometry .......................... 10

      B.    Plaintiff Has Identified No Factual Allegations Showing Estée Lauder Acted with Negligence, Recklessness, or Intent ............................................................ 12

IV.   PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT CLAIMS AGAINST ESTÉE LAUDER FOR ALLEGED BIPA VIOLATIONS RELATED TO ANY WEBSITES OTHER THAN TOO FACED ................................................................... 13

CONCLUSION ...................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ...................................................................................3

*Annie Oakley Enters. v. Sunset Tan Corporate & Consulting, LLC*,
    703 F. Supp. 2d 881 (N.D. Ind. 2010) .....................................................................5

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) .................................................................................13

*Art Akiane LLC v. Mardel, Inc.*,
    2021 U.S. Dist. LEXIS 142503 (N.D. Ill. July 30, 2021) ........................................3

*In re Asacol*,
    907 F.3d 42 (1st Cir. 2018) ....................................................................................14

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) ...................................................................................3

*Behrens v. JPMorgan Chase Bank N.A.*,
    2019 2019 U.S. Dist. LEXIS 55952 (S.D.N.Y. Mar. 31, 2019) ...............................6

*Cuyler v. United States*,
    362 F.3d 949 (7th Cir. 2004) .................................................................................12

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
    885 F. Supp. 2d 894 (S.D. Ill. 2012) .......................................................................7

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
    807 F. Supp. 2d 732 (N.D. Ill. 2011) .......................................................................5

*Esquivel v. Airbus Americas, Inc.*,
    No. 1:20-cv-07525 (N.D. Ill. Feb. 22, 2022) (Dkt. No. 47) ......................................5

*Fallick v. Nationwide*,
    162 F.3d 410 (6th Cir. 1998) .................................................................................14

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
    141 S. Ct. 1017 (2021) .........................................................................................3, 4

*Fox v. Ritz-Carlton Hotel Co., LLC*,
    977 F.3d 1039 (11th Cir. 2020) .............................................................................14

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ..............................................................................................14

*Gullen v. Facebook.com, Inc.*,
    2016 U.S. Dist. LEXIS 6958 (N.D. Ill. Jan. 21, 2016) .........................................3, 4

*Heard v. Becton, Dickinson & Co.*,
    440 F. Supp. 3d 960 (N.D. Ill. 2020) .....................................................................11

*Heard v. Becton, Dickinson & Co.*,
   524 F. Supp. 3d 831 (N.D. Ill. 2021) ................................................................................10

*Himber v. Live Nation Worldwide, Inc.*,
   2018 U.S. Dist. LEXIS 84945 (E.D.N.Y. May 21, 2018) ....................................................6, 7

*Hussein v. Coinabul, LLC*,
   2014 2014 U.S. Dist. LEXIS 175333 (N.D. Ill. Dec. 19, 2014) ..........................................8

*J.S.T. Corp. v. Gold*,
   2020 U.S. Dist. LEXIS 147303 (N.D. Ill. Aug. 16, 2020) ....................................................5

*Jacobs v. Hanwha Techwin Am., Inc.*,
   2021 U.S. Dist. LEXIS 139668 (N.D. Ill. July 27, 2021) ....................................................11

*John E. Reid and Assocs., Inc. v. Netflix, Inc.*,
   2020 U.S. Dist. LEXIS 51303 (N.D. Ill. Mar. 23, 2020) (Shah, J.) ....................................15

*Johnson v. Orkin, LLC*,
   556 F. App'x 543 (7th Cir. 2014) ....................................................................................15

*King v. PeopleNet Corp.*,
   2021 U.S. Dist. LEXIS 207694 (N.D. Ill. Oct. 28, 2021) ....................................................4

*Kloss v. Acuant, Inc.*,
   462 F. Supp. 3d 873 (N.D. Ill. 2020) ..........................................................................10, 11

*Kukovec v. L'Oréal USA Prods., Inc.*,
   No. 1:22-cv-01990 (N.D. Ill.) (Dkt. No. 1) ..........................................................................9

*Matlin v. Spin Master Corp.*,
   921 F.3d 701 (7th Cir. 2019) ............................................................................................3

*McGoveran v. Amazon Web Servs.*,
   488 F. Supp. 3d 714 (S.D. Ill. 2020) ..............................................................................3, 5

*McGoveran v. v. Amazon Web Servs.*,
   2021 U.S. Dist. LEXIS 189633 (D. Del. Sept. 30, 2021) ....................................................5

*Medline Indus., Inc. v. Diversey, Inc.*,
   2020 2020 U.S. Dist. LEXIS 177579 (N.D. Ill. Sept. 28, 2020) ........................................15

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ................................................................................................6

*Modern Trade Commcn's v. PSMJ Resources, Inc.*,
   2011 2011 U.S. Dist. LEXIS 93032 (N.D. Ill. Aug. 19, 2011) ............................................15

*Namuwonge v. Kronos, Inc.*,
   418 F. Supp. 3d 279 (N.D. Ill. 2019) ..............................................................................12

*NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013) ..............................................11, 12

*Neale v. PAR Tech. Corp.*,
   419 F. Supp. 3d 1088 (N.D. Ill. 2018) ............................................................................11

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)..........................................................14

*Nguyen v. Barnes & Noble, Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ......................................................8

*Northern Grain Mkts., LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ........................................................5

*Pruitt v. Par-A-Dice Hotel Casino*,
    2020 U.S. Dist. LEXIS 158025 (C.D. Ill. Aug. 31, 2020)......................11

*RAR, Inc. v. Turner Diesel*,
    107 F.3d 1272 (7th Cir. 1997) ......................................................3

*Rogers v. City of Hobart*,
    996 F.3d 812 (7th Cir. 2021) ........................................................3

*Rogers v. CSX Intermodal Terminals, Inc.*
    409 F. Supp. 3d 612 (N.D. Ill. 2019) ............................................12

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) ......................................................8

*Sorkin v. Target Corp.*,
    No. 21 C 3546  (N.D. Ill. June 2, 2022) (Dkt. No. 42)....................14, 15

*Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*,
    522 F. Supp. 3d 402 (N.D. Ill. 2021)............................................14

*In re TikTok, Inc. Consumer Privacy Litig.*,
    No. 1:20-cv-04699 (N.D. Ill.) (Dkt. No. 114)..................................9

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)................................................................13

*Van Tassell v. United Mktg. Grp., LLC*,
    795 F. Supp. 2d 770 (N.D. Ill. 2011) ............................................8

*In re Zappos.com, Inc., Customer Data Sec.*
    *Breach Litig.*, 893 F. Supp. 2d 1058 (D. Nev. 2012)........................8

**State Cases**

*Hubbert v. Dell Corp.*,
    359 Ill. App. 3d 976 (2005) ........................................................9

**Rules**

Fed. R. Civ. P. 12(b)(2)..................................................................1

Fed. R. Civ. P. 12(b)(3)..................................................................1

Fed. R. Civ. P. 12(b)(6)............................................................1, 9, 12

Fed. R. Civ. P. 23........................................................................14

Estée Lauder respectfully submits this reply in further support its motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3), and (b)(6) (the "Motion").[1]

## **INTRODUCTION**

In an attempt to salvage her baseless BIPA claims—none of which can be heard by this Court because it does not have jurisdiction and venue is not proper—Plaintiff resorts to (1) arguing that specific jurisdiction can be established because Estée Lauder operates in and sells cosmetics in Illinois, and the purpose of Virtual Try-On tool on Too Faced's website is also to sell cosmetics, and (2) claiming that she never agreed to be bound by the arbitration and class action waiver provisions in the Terms and Conditions on the Too Faced website and that they were not, in her view, sufficiently presented. With respect to the former point, Plaintiff has not and cannot establish the necessary suit-related substantial connection with Illinois for this Court to hear Plaintiff's BIPA claims as to the geography-neutral Virtual Try-On tool. And with respect to the latter point, Plaintiff was on inquiry notice of these provisions, both because the Too Faced website puts a reasonably prudent user on notice of them and because Plaintiff is an avid app and website user who has pursued BIPA claims in the past, and in that context became aware of the fact that apps and websites frequented by many users have terms and conditions that apply to their use. This suit should thus be dismissed for lack of jurisdiction and because it belongs in individual arbitration.

In addition, Plaintiff argues that she has pled enough in her Complaint and that Estée Lauder is attempting to apply a "novel, heightened pleading standard." Opp. at 1. Not so. It is Plaintiff's obligation to plead a plausible claim under the *Twombly/Iqbal* standard, and she has not done that. The same is true of Plaintiff's lack of standing to sue with respect to the Other Brands' websites; Plaintiff must establish an injury-in-fact, which she cannot possibly do as she concedes

---

[1] Abbreviated terms not otherwise defined herein have the meanings ascribed to them in Estée Lauder's opening memorandum of law in support of its motion to dismiss, dated May 27, 2022 [Dkt. 31] ("Motion" or "Mot.").

she never visited those websites. This is not about Plaintiff's adequacy to serve as a class representative, the issue Plaintiff erroneously asserts is being raised prematurely in the Opposition; rather, Estée Lauder is arguing that Plaintiff has no standing to bring a BIPA claim based on the Other Brands' websites as she has no personal stake as to them.

For all these reasons and those set forth in the Motion, this case should be dismissed.

## ARGUMENT

## I.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER ESTÉE LAUDER

### A.     Plaintiff Has Conceded That This Court Lacks General Jurisdiction

Plaintiff does not address, and therefore concedes, that the Court lacks general jurisdiction over Estée Lauder because it is not "at home" in Illinois. *See* Mot. at. 6-7.

### B.     The Court Lacks Specific Jurisdiction Because Plaintiff Has Failed to Establish That Estée Lauder's Purported Suit-Related Conduct Creates a Substantial Connection with Illinois

Even as Plaintiff concedes the absence of general jurisdiction, she attempts to create what amounts to a quasi-general jurisdiction rule in response to Estée Lauder's straightforward argument that this Court lacks specific jurisdiction over Estée Lauder because it has not engaged in any purposeful suit-related conduct in Illinois. Mot. at 7-10. Plaintiff packs her Opposition with supposed "jurisdictional facts" about Estée Lauder's purported presence in Illinois and asks this Court to deem activities relating to the general marketing and sale of cosmetics to be a sufficient tie to this litigation, because the "Virtual Try-On tool's only purpose is to market and sell Estée Lauder's cosmetic products." Opp. at 3. Put another way, Plaintiff argues that because Estée Lauder's activities in Illinois involve the sale of cosmetics, and the Virtual Try-On tool also involves the sale of cosmetics, the geography-neutral Virtual Try-On tool must also create the requisite specific jurisdictional link to Illinois. But that is a *non sequitur* as it fails to address the

only relevant question for this Court: whether the specific suit-related conduct that Plaintiff challenges in her pleading creates a substantial connection with Illinois. It does not.

Plaintiff asserts that Estée Lauder has "purposefully availed" itself of doing business in Illinois because it sells cosmetics in the state, had or has Illinois employees, and/or has sought to recruit new talent in the state. Opp. at 2. All of which, even if true, is irrelevant. Specific jurisdiction demands that the defendant's "*suit-related* conduct must create a ***substantial connection***" with Illinois. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (second emphasis added); *see also, e.g., McGoveran v. Amazon Web Servs.*, 488 F. Supp. 3d 714, 723 (S.D. Ill. 2020) (dismissing for lack of specific personal jurisdiction "[b]ecause the litigation does not arise from contacts that Defendants themselves created with Illinois or actions purposefully directed at residents of Illinois").[2] Plaintiff has failed to articulate how the Virtual Try-On tool—accessible to any user in any state—creates any such substantial connection.

Plaintiff also ignores governing Seventh Circuit precedent regarding specific jurisdiction in the context of website interactivity. *See* Mot. at 8 (citing *Advanced Tactical*, 751 F.3d at 801; *be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011)).[3] The only case Plaintiff attempts to distinguish is *Gullen v. Facebook.com, Inc.*, 2016 U.S. Dist. LEXIS 6958 (N.D. Ill. Jan. 21, 2016)

---

[2] *See also, e.g., Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1025 (2021) ("there must be 'an affiliation between the forum and the underlying controversy'"); *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021) ("In recent years, the Supreme Court has emphasized that the relationship among the defendant, the forum, and the litigation must arise out of contacts that the *defendant* has created with the forum state."); *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1277 (7th Cir. 1997) ("We cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally required minimum contacts.").

[3] *See also, Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) ("[C]ourts 'should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates an interactive website that is accessible in the forum state.'"); *Art Akiane LLC v. Mardel, Inc.*, 2021 U.S. Dist. LEXIS 142503, at *9 (N.D. Ill. July 30, 2021) ("It is well established that a defendant's operation of an interactive website alone does not give rise to personal jurisdiction.").

(cited at Mot. at 4).  Opp. at 4.  It remains directly on point.  In *Gullen*, the court found Facebook's

sales, marketing, and other activities in Illinois had "no relationship to this suit, which arises from

Facebook's alleged collection of biometric data from a photo." 2016 U.S. Dist. LEXIS 6958, at

*5. Plaintiff's claims concerning the Virtual Try-On tool suffer the same defect. The "jurisdictional

facts" Plaintiff identifies have "no relationship to this suit, which arises from [Estée Lauder's]

alleged collection of biometric data[.]"  *Id.*[4]  Plaintiff's citation to *King v. PeopleNet Corp.*, 2021

U.S. Dist. LEXIS 207694 (N.D. Ill. Oct. 28, 2021) (Opp. at 4), is misplaced and favors Estée

Lauder, because it confirms specific jurisdiction under BIPA requires Illinois-directed conduct

relating to the capture or use of biometric identifiers—not just marketing activity.[5]

Plaintiff's reliance on *Ford* to assert a sufficient connection to Illinois is likewise inapt.

*See* Opp. at 3.  In *Ford*, the Court held that specific jurisdiction attaches "when a company

cultivates a market for a product in the forum State and the product malfunctions there." 141 S.

Ct. 1017, 1019.  Here, even assuming Estée Lauder cultivated a market for cosmetics in Illinois,

that has no suit-related connection to the alleged collection of Plaintiff's biometric information;

indeed, Plaintiff affirmatively alleges she did not purchase any product from the Too Faced website

after using the Virtual Try-On tool, *see* Compl. ¶ 34, and she does not claim to have been exposed

to any Illinois-specific conduct or injured by anything that was based or took place in Illinois. "The

Supreme Court's decision in *Ford* did not do away with the requirements for purposeful availment

---

[4] Notwithstanding Plaintiff's assertion to the contrary, *see* Opp. at 4, *Gullen* does not say that Facebook "did not use the technology to market or sell any products."  And even if it did, dismissal is still appropriate because, as the *Gullen* court stated, "plaintiff does not allege that [Estée Lauder] targets its alleged biometric collection activities at Illinois residents" and "the fact that its site is accessible to Illinois residents does not confer specific jurisdiction." *Id*. at 7.

[5] In *King*, the court found that the defendant's alleged capture of biometric identification without publishing notice specifically arose out of contacts the defendant created with Illinois—entering into contracts with Illinois companies to provide biometric timekeeping services for these companies' employees. 2021 U.S. Dist. LEXIS 207694, at *13-14. Unlike in *King*, where the court stated that "[the defendant's] conduct in the Illinois biometric information market led it to capturing King's biometric data in Chicago," *id.* at *16, there is no evidence that Estée Lauder's general marketing, employment, or recruitment activities in Illinois are substantially connected to the operation of the Virtual Try-On tool which Plaintiff claims operated in violation of BIPA.

and that a defendant's contacts with the forum must relate to the alleged injury. It affirmed them." *Esquivel v. Airbus Americas, Inc.*, No. 1:20-cv-07525, (N.D. Ill. Feb. 22, 2022) (Dkt. No. 47) (Ex. 1).

Finally, Plaintiff's "fair play and substantial justice" arguments are a non-starter because Plaintiff has failed in the first instance to establish that jurisdiction can be exercised over Estée Lauder.[6] Even if the Court were to consider these arguments, it would plainly be unfair and unduly burdensome to require Estée Lauder, a Delaware corporation based in New York, to defend this BIPA action in Illinois when the Virtual Try-On tool and any purported related conduct is not directed to Illinois. *See Annie Oakley Enters. v. Sunset Tan Corporate & Consulting, LLC*, 703 F. Supp. 2d 881, 894 (N.D. Ind. 2010) ("Finding specific jurisdiction would offend the traditional notions of justice and fair play because Defendant . . . cannot be said to have purposefully availed itself of the laws of Indiana nor could it have reasonably foreseen being haled into court in Indiana as a result of the Agreement."); *see also McGoveran v. v. Amazon Web Servs.*, 2021 U.S. Dist. LEXIS 189633, at *15 (D. Del. Sept. 30, 2021) (finding Plaintiff's argument stating, "'under BIPA, as long as the source of the biometric data is Illinois, that's enough to establish liability.' … flies in the face of Illinois cases"). Fair play and substantial justice considerations do not favor Plaintiff when she has neither pled nor presented facts to establish that the alleged BIPA-violative conduct occurred "primarily and substantially" in Illinois. *Id.* at *11.

---

[6] *See, e.g., Northern Grain Mkts., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014) (holding that, because plaintiff "failed to show that [defendant] has sufficient minimum contacts with Illinois," the court "need not go further in the personal-jurisdiction analysis by, for example, analyzing whether requiring [defendant] to defend the suit" in Illinois "offends 'traditional notions of fair play and substantial justice'"); *J.S.T. Corp. v. Gold*, 2020 U.S. Dist. LEXIS 147303, at *12 (N.D. Ill. Aug. 16, 2020) (same); *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 736, 739 (N.D. Ill. 2011) (holding that where plaintiff failed to satisfy its "initial burden" of satisfying "the first part of the specific jurisdiction test," it is "unnecessary to assess whether the exercise of jurisdiction would offend 'traditional notions of fair play and substantial justice'").

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF IS BOUND BY THE TERMS AND CONDITIONS' ARBITRATION AND CLASS ACTION WAIVER PROVISIONS

Plaintiff tellingly does not dispute that the Terms and Conditions contain both arbitration and class action waiver provisions and that they encompass her claims if this Court agrees an enforceable arbitration agreement exists. Rather, Plaintiff insists that she did not formally assent to the Terms and Conditions on the Too Faced website and that they were not, in her view, sufficiently presented. *See* Opp. at 5-8. Plaintiff's argument lacks merit because she was, at a minimum, on inquiry notice of the Terms and Conditions and their key provisions.

The question of whether a party assented to a website's terms is governed by state contract law. Under New York law,[7] a user need not have actual knowledge of the terms to be bound by them. Rather, as Plaintiff concedes (*see* Opp. at 7-8), a website's terms are binding if a "reasonably prudent user" would be on "inquiry" notice of them. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017) (finding that user was on inquiry notice); *Himber v. Live Nation Worldwide, Inc.*, 2018 U.S. Dist. LEXIS 84945, at *9-14 (E.D.N.Y. May 21, 2018) (same). Central to the inquiry notice analysis is the overall "design and content" of the website and whether the terms are presented in a clear and conspicuous manner. *Meyer*, 868 F.3d at 74-75; *Himber*, 2018 U.S. Dist. LEXIS 84945, at *9-14.

Here, the Too Faced website—the only company brand website Plaintiff contends she used—puts any reasonably prudent user on inquiry notice. Clear and conspicuous hyperlinks to the Terms and Conditions are contained on the homepage of the Too Faced website, the same

---

[7] New York law applies here because the Terms and Conditions contain a New York choice-of-law provision. Ex. 2 (Terms and Conditions) § 14. Even if the Court were to apply Illinois law in deciding whether Plaintiff assented to the Terms and Conditions, the result would still be the same because New York's and Illinois' laws are substantively similar on this question. *See, e.g.*, *Behrens v. JPMorgan Chase Bank N.A.*, 2019 U.S. Dist. LEXIS 55952, at *33 n.14 (S.D.N.Y. Mar. 31, 2019) (New York and Illinois law "are consistent on all material matters concerning contract formation").

webpage as the Virtual Try-On tool, and on any other webpage that Plaintiff may have viewed while navigating the website. *See* Ex. 3. Indeed, if Plaintiff visited the website and used the Virtual Try-On tool to test "various products," as she claims, *see* Compl. ¶¶ 32, 33, she would have seen the hyperlink to the Terms and Conditions several times, including in testing the very foundation product she specifically identifies in her Complaint, *id.* ¶ 33. *See* Ex. 3 at Part E; *Himber*, 2018 U.S. Dist. LEXIS 84945, at *1 (finding that plaintiff was on inquiry notice because, by "using the website, [he] would have clicked on multiple webpages," which "contained the reasonably conspicuous hyperlinked Terms of Use"). A hyperlink to the Terms and Conditions is also located on the webpage containing Too Faced's "Privacy Policy," which Plaintiff admits she received through a "pop-up notification" before using the Virtual Try-On tool. Compl. ¶¶ 25, 37.

The hyperlink to the Terms and Conditions towards the bottom of any webpage is located under a "Privacy & Terms" heading in bold and all-caps and within a contrasting-colored banner. Ex. 3 at Part A.[8] In addition to this hyperlink, the Too Faced website provides users with several other potential and conspicuous notifications with respect to the Terms and Conditions, including (1) when a new customer creates a user account (Ex. 3 at Part C), (2) when an existing customer signs into his or her account (*id.*), (3) during the checkout and payment process (Ex. 3 at Part D), and (4) at any customer service-related webpage, including the "shipping," "returns," "FAQ," and "contact us" pages. (Ex. 3 at Part F).[9]

---

[8] Plaintiff contends that this hyperlink to the Terms and Conditions is located in the webpage's "bottom right corner" amidst 22 other links. Opp. at 6. But even Plaintiff's screenshot on the very next page (Opp. at 7) shows that the link is under a clearly titled "Privacy & Terms" heading near the middle of the displayed screen.

[9] To that end, Plaintiff's assertion that the "only way for a consumer to find" the Terms and Conditions is to "scroll all the way down to the bottom" of a webpage, Opp. at 6-7, is not correct. As noted above, there are other ways by which the Terms and Conditions can be found, many of which require no scrolling and/or are not located near the webpage's bottom. *See supra* at 7.

As even the cases on which Plaintiff relies recognize, whether Plaintiff chose to click on one of the Too Faced website's many hyperlinks to the Terms and Conditions is not relevant to whether she was on inquiry notice of them. *See, e.g.*, *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 901-02 (S.D. Ill. 2012) ("Whether or not Plaintiffs actually read [defendant's terms] is irrelevant, of course, to the matter of the conspicuousness of the [terms] and thus Plaintiffs' constructive knowledge of the [terms], and Plaintiffs are bound by [the terms] whether Plaintiffs read them or not.") (cited at Opp. at 8).[10] Had Plaintiff done so, however, she should have seen the following two statements upfront and in all capitalized letters, without scrolling:

- "By accessing or using the Site, you are acknowledging that you have read, understand, and agree, without limitation or qualification, to be bound by these Terms of Website Use. IF YOU DO NOT AGREE TO THE TERMS OF WEBSITE USE, YOU MAY NOT USE THE SITE";[11] and

- "SECTION 13 BELOW TITLED 'ARBITRATION OF DISPUTES; WAIVER OF CLASS ACTIONS' CONTAINS A BINDING ARBITRATION CLAUSE AND A CLASS ACTION WAIVER THAT MAY APPLY TO YOU. THEY AFFECT YOUR LEGAL RIGHTS PLEASE READ THEM."

Ex. 3 at Part B (screenshot of Terms and Conditions as displayed without any user scrolling).

Tellingly, nowhere does Plaintiff allege that she had no knowledge or understanding with respect to the Terms and Conditions that may apply to the Too Faced website. Nor could she

---

[10] Plaintiff's other cited cases, *see* Opp. at 5-8, are easily distinguishable from the facts here. *See, e.g.*, *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016) (finding that defendant's website "actively misleads the customer," including by mislabeling the hyperlink to the terms of use); *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1174, 1177-79 (9th Cir. 2014) (a hyperlink "located in the bottom left-hand corner of every page" was the sole notice that website provided to visitors of its terms of use); *Hussein v. Coinabul, LLC*, 2014 U.S. Dist. LEXIS 175333, at *3, *6 (N.D. Ill. Dec. 19, 2014) (except for one hyperlink "buried at the bottom of the webpage," website at issue contained no hyperlinks or notifications to terms of service and users could, for example, "place an order" without being directed to such terms); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) (website did not "direct a user to the Terms of Use when creating an account, logging in to an existing account, or making a purchase"); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 792 (N.D. Ill. 2011) (website at issue contained no hyperlink to conditions of use "on either the home page or the check out pages").

[11] Plaintiff's assertion that the website contains "no notice" that "use of the site manifests assent" to the Terms and Conditions, Opp. at 7, is belied by the above-quoted language, which plainly states that, by "using the Site," users acknowledge that they "have read, understand, and agree . . . to be bound by" the Terms and Conditions.

credibly do so.  In addition to this action, Plaintiff has recently filed two other BIPA class action lawsuits arising out of her alleged use of a website or app.  In 2020, Plaintiff—represented by the same counsel as in this action—sued TikTok, alleging that she had "never read or seen" the app's "terms of use" and that users did not notice or consent to the terms' arbitration and class action waiver provisions.  *In re TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699 (N.D. Ill.), Compl. ¶¶ 91, 310-321 (Dkt. No. 114) (attached as Ex. 4).  Necessarily, at this time—*i.e.*, more than a year before she used the Too Faced website—she was aware that terms and conditions of use may contain arbitration and class action waiver provisions that apply to all users.

More recently, on the same day she filed this action, Plaintiff—again represented by the same counsel as here—sued L'Oréal USA Products, alleging that she used that company's virtual try-on feature on December 20, 2021—ten days before her alleged use of the Virtual Try-On tool in this case.  *See Kukovec v. L'Oréal USA Prods., Inc.*, No. 1:22-cv-01990 (N.D. Ill.), Compl. ¶ 31 (Dkt. No. 1-2) (attached as Ex. 5).  Plaintiff's own litigation history makes clear that she is an avid and prodigious Internet app and tool user who at this point knows that websites routinely contain terms of use accessible to users via hyperlinks.  *See, e.g.*, *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 984 (2005) ("Common sense dictates that because the plaintiffs were purchasing computers online, they were not novices when using computers. A person using a computer quickly learns that more information is available by clicking on a blue hyperlink.").  Plaintiff's attempt to feign ignorance of this fact in yet another suit should not be countenanced by this Court.

In sum, because Plaintiff was on, at a minimum, inquiry notice of the Terms and Conditions' arbitration and class action waiver provisions encompassing her claims, the Complaint should be dismissed (or at least individual arbitration should be compelled, and this case stayed).

III.   **THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM UNDER BIPA**

   A.   **Plaintiff Has Identified No Non-Conclusory Factual Allegations to Establish That Estée Lauder Collected or Possessed Her Facial Geometry**

Estée Lauder argues that the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff pleads no facts to plausibly establish that it "collected" or "is in possession of" her "facial geometry," as is required to state a claim under Sections 15(a) and (b) of BIPA. Mot. at 12-13. Estée Lauder highlighted that the only purported "factual support" Plaintiff proffers for her conclusory allegation as to how the Virtual Try-On tool's technology operates is a quote from the website of a completely unrelated third-party technology developer, Modiface, and that the Complaint does nothing to connect Modiface's technology to the technology underlying the Virtual Try-On tool on the Too Faced website. *Id.* (citing Compl. ¶ 23).

Lacking any response to this argument, Plaintiff ignores it. In fact, there is no mention of Modiface in the Opposition. Pointing to Paragraph 23 of the Complaint—the very same paragraph that references Modiface's technology—Plaintiff nonetheless argues that she has adequately pled her claims because that paragraph alleges that the Virtual Try-On tool operates by purportedly using "facial-geometry scans" and by purportedly "capturing the facial geometry of users' photos." Opp. at 9 (citing Compl. ¶ 23). But, contrary to what Plaintiff suggests, these conclusory allegations—supported by no relevant facts—cannot salvage her claims. *See, e.g.*, *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 877 (N.D. Ill. 2020) (holding that complaint's "barebone factual support and recitation of statutory language" were insufficient to state a BIPA claim). This is not a "novel, ultra-heightened pleading standard," as Plaintiff contends. Opp. at 9. Rather, this is what is required of a plaintiff in federal court pursuant to *Twombly, Iqbal*, and its progeny. Mot. at 6.

Plaintiff next points to three cases as support for her assertion that she has allegedly pled "enough." Opp. at 10. But unlike here, the complaints in those other cases contained specific

factual allegations about the technology at issue and how that technology operated to purportedly collect biometrics. *See Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 836 (N.D. Ill. 2021) (complaint alleged that defendant manufactured "an automated medication dispensing system" named "Pyxis" that required hospital workers to "submit a fingerprint scan" to "obtain medication for distribution to patients" and that "extract[ed] unique features in the fingerprint to create a user template, which [was] stored both on the device and in a database"); *Neale v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1090 (N.D. Ill. 2018) (complaint alleged that defendant "develop[ed] cloud-based point of sale ('POS') systems" that enabled restaurants, including the restaurant at which plaintiff worked, to "track their employees' time by using a biometric finger scanner," which "collected and stored" the fingerprint scan in the defendant's "database"); *Pruitt v. Par-A-Dice Hotel Casino*, 2020 U.S. Dist. LEXIS 158025, at *2, *5 (C.D. Ill. Aug. 31, 2020) (plaintiffs specifically alleged that they "learned that biometric software was being used" in "facial recognition cameras used by" the casino defendants). These cases thus have no bearing here.

Grasping at straws, Plaintiff finally argues that she need not "plead specific facts regarding an entity's capture, collection, and possession" of biometrics. Opp. at 10. But, unsurprisingly, Plaintiff cites no authority for her extraordinary suggestion that BIPA claims are somehow exempt from Rule 8's pleading requirements. Nor could she. Courts in this District routinely dismiss BIPA claims where, as here, the plaintiff "merely parrot[s] BIPA's statutory language" without "alleging how, when, or any other factual detail" regarding the alleged collection or possession of biometrics. *See, e.g.*, *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 U.S. Dist. LEXIS 139668, at *6-9 (N.D. Ill. July 27, 2021) (dismissing BIPA §§ 15(a) and (b) claims); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 967-69 (N.D. Ill. 2020) (same); *see also Kloss*, 462 F. Supp. 3d at 877; Mot. at 13.

11

### B. Plaintiff Has Identified No Factual Allegations Showing Estée Lauder Acted with Negligence, Recklessness, or Intent

Estée Lauder contends that Plaintiff has failed to allege any facts showing that its purported conduct was negligent, reckless, or intentional, as is required to state a claim for statutory damages under BIPA. Mot. at 13-14. In response, Plaintiff argues that a defendant's "state of mind" may be alleged "generally." Opp. at 11 (citing *NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013)). But that does not mean that Plaintiff may rely simply on statements amounting to legal conclusions; indeed, the very case on which Plaintiff relies makes clear that "a plaintiff still must point to details sufficient to render" the alleged state of mind "plausible." *NBCUniversal Media*, 734 F.3d at 614-615 (affirming dismissal of defamation claim where no facts pled showing defendant acted with actual malice). Plaintiff has failed to do that here.

Plaintiff also claims she is entitled to an inference of negligent, reckless, or intentional conduct because of the size and sophistication of the defendant and because BIPA is a well-known statute. Opp. at 12. Tellingly, Plaintiff cites no authority for this argument, which if true would effectively repeal any state-of-mind requirement if a statute is "widely publicized" and the claim is brought against a "large" company.[12] *Id.* Plaintiff's proposed inference is particularly illogical and unreasonable here because, as explained above, Estée Lauder is an out-of-state defendant with no meaningful contacts to Illinois relating to this litigation. Plaintiff's claims for statutory damages under BIPA should thus be dismissed.[13]

---

[12] Plaintiff cites *Cuyler v. United States*, 362 F.3d 949 (7th Cir. 2004), for the proposition that, "under Illinois law, 'violation of a statutory standard of care is prima facie evidence of negligence.'" Opp. at 12. But *Cuyler* is completely inapposite to this case and has nothing to do with the requirements for pleading state of mind on a Rule 12(b)(6) motion to dismiss. In any event, it was decided well before the Supreme Court's decisions in *Twombly* and *Iqbal*.

[13] *See, e.g.*, *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019) (dismissing BIPA claim for damages based on intentional and reckless conduct where complaint's allegations concerning such conduct did "nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15"); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing BIPA claim for statutory damages because plaintiff's "abstract statements regarding damages" were insufficient to establish that the defendant "acted recklessly or intentionally").

## IV.   PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT CLAIMS AGAINST ESTÉE LAUDER FOR ALLEGED BIPA VIOLATIONS RELATED TO ANY WEBSITES OTHER THAN TOO FACED

Estée Lauder argues that Plaintiff lacks standing to sue with respect to Other Brands' websites she has not personally visited because she cannot possibly have been injured by them. *See generally* Mot. at 14-15.   Plaintiff responds that Estée Lauder is making a premature challenge to Plaintiff's adequacy to serve as a class representative. *See* Opp. at 12-15.  While Estée Lauder reserves the right to make such a challenge should this case proceed past this Motion (and it should not), Plaintiff mischaracterizes Estée Lauder's argument.  At present, this case only concerns Plaintiff's purported individual claims, and no class certification request is pending before this Court. Rather, Estée Lauder contends that Plaintiff lacks Article III standing to maintain a claim at this juncture with respect to Other Brands' websites, and necessarily is challenging the scope of the claims that Plaintiff is purporting to bring against Estée Lauder.

The recent decision *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), is instructive.  As expressed by the Supreme Court, "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *Id.* at 2200.  Following *TransUnion*, Plaintiff cannot assert a BIPA claim relating to her ***non-use*** of a Virtual Try-On tool to virtually "try on" Others Brands' cosmetics found on websites that Plaintiff does not allege she ever even visited in the first place. Put simply, no use, no injury, no individual standing.  *See also* Mot. at 15 (collecting cases).

Plaintiff's reliance on *Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008), in opposing the Motion is misguided. Opp. at 12-13.  *Arreola* involved an interlocutory appeal of the district court's denial of class certification, not a motion to dismiss. *Id*. at 790-91. And while the *Arreola* court found plaintiff had standing to proceed with his Section 1983 claim even though he was no longer incarcerated, *id.* at 795, Arreola did not assert that he suffered injury relating to

jails that he was never in. Estée Lauder is not arguing that Plaintiff's claims should be dismissed for lack of standing because she "cannot prove that [s]he is entitled to any relief." *Id.* To the contrary, Plaintiff's Article III infirmity occurs prior to consideration of the relief being sought.

Plaintiff also cites *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402 (N.D. Ill. 2021), a case which also challenged the fitness of the plaintiffs to represent the putative classes. *See* Opp. at 13. Notably, however, *Caterpillar* only confirms that a plaintiff must allege injury as a result of something specific in order to have standing to bring an individual claim with respect to the particular event causing the plaintiff's injury. *Id.* at 407. Similarly, *Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039 (11th Cir. 2020) and *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (cited at Opp. at 13-14)—both out-of-Circuit cases with no precedential value—are yet additional cases that focus on class representative standing, which is not at issue in the Motion.

Finally, Plaintiff argues that the Virtual Try-On tool is allegedly "the same" on the Too Faced website as on each of the Other Brands' websites and that this somehow excuses her from pleading a purported injury relating to the Other Brands. *See* Opp. at 14-15. It does not. She tellingly does not address any of the cases cited on page 15, n.8 of the Motion, and instead cites inapposite case law.[14] Nor does she grapple with the fact that the Other Brands' websites sell different products than Too Faced, and necessarily the Virtual Try-On technology available on each of these websites would permit users to "try on" different products than those Plaintiff alleges she did.

---

[14] *Gratz v. Bollinger*, 539 U.S. 244 (2003), *Fallick v. Nationwide*, 162 F.3d 410 (6th Cir. 1998), and *In re Asacol*, 907 F.3d 42 (1st Cir. 2018) are distinguishable as they are all cases reviewing class certification rulings under Rule 23. In contrast, the Motion is a motion to dismiss Plaintiff's claims. *See supra*, at 13. Moreover, in *Gratz*, the parties did not raise a standing issue (Justice Stevens did in dissent) and the majority concluded that the dissent argument was a distinction without a difference. 539 U.S. at 260, 262. This is wholly separate and apart from Estée Lauder's challenge to Plaintiff's standing. Finally, *Fallick*, and *Asacol* lack any precedential value.

Recent case law from the Northern District of Illinois further confirms Estée Lauder's position. *See Sorkin v. Target Corp.*, No. 21 C 3546, (N.D. Ill. June 2, 2022) (Dkt. No. 42) (Ex. 6) (dismissing claims relating to twelve products Plaintiff did not purchase). In *Sorkin*, the Court highlighted the need to have a "personal stake" in order to bring a claim, and ruled as follows:

> Plaintiff argues that he has standing to pursue claims based on the twelve products he did not purchase, because those products are similar to the product he actually purchased. That is not, however, the test for standing that the Supreme Court has applied for decades. Standing requires injury in fact to the plaintiff. Here, plaintiff does not identify any injury he suffered from the labels on those other products. Perhaps he was stressed, annoyed or otherwise bothered that someone else might have purchased those products, but none of those feelings constitutes a concrete injury for purposes of Article III standing . . . Plaintiff has not alleged he suffered any injury with respect to those other products. He lacks standing to pursue claims based on those products.

*Id*. at 5-6. In short, Plaintiff has not claimed any injury relating to the Other Brands or their websites, and thus does not have standing to bring a claim with respect thereto.

## CONCLUSION

For these reasons, Estée Lauder respectfully requests that the Court dismiss the Complaint and deny any request by Plaintiff for leave to amend.[15]

---

[15] Plaintiff's unsubstantiated request for leave to amend, Opp. at 15, should be denied as both vague and futile because Plaintiff cannot correct the jurisdictional, venue, and other defects Estée Lauder has identified through an amended complaint. *See, e.g.*, *Johnson v. Orkin, LLC*, 556 F. App'x 543, 545 (7th Cir. 2014) (affirming denial of leave to amend as futile where "arbitration agreements" precluded plaintiff from bringing claims in federal court); *Modern Trade Commc'n's v. PSMJ Resources, Inc.*, 2011 U.S. Dist. LEXIS 93032, at *26-27 (N.D. Ill. Aug. 19, 2011) (dismissing complaint for lack of personal jurisdiction and denying leave to amend where plaintiff failed to point to "any new facts that would alter the jurisdictional outcome"); *see also John E. Reid and Assocs., Inc. v. Netflix, Inc.*, 2020 U.S. Dist. LEXIS 51303, at *29 (N.D. Ill. Mar. 23, 2020) (Shah, J.) (denying leave to amend as futile because, even if an amended complaint "manages to establish personal jurisdiction," it "would run into" other "substantive deficiencies" that would be "fatal" to plaintiff's claims). Plaintiff's request for jurisdictional discovery, Opp. at 15, is equally unavailing and should be denied because Plaintiff has failed to "make a 'colorable' showing of personal jurisdiction," as is required to obtain such relief. *Medline Indus., Inc. v. Diversey, Inc.*, 2020 U.S. Dist. LEXIS 177579, at *13-14 (N.D. Ill. Sept. 28, 2020) (denying jurisdictional discovery where "lack of personal jurisdiction [was] clear").

Dated: July 11, 2022

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ *Gregory E. Ostfeld*
      Gregory E. Ostfeld
      Christopher A. Mair
      77 West Wacker Drive, Suite 3100
      Chicago, Illinois
      (312) 456-8400
      ostfeldg@gtlaw.com
      mairc@gtlaw.com

      Sylvia E. Simson
      (*pro hac vice forthcoming*)
      Daniel I.A. Smulian
      (*pro hac vice forthcoming*)
      One Vanderbilt Avenue
      New York, New York 10017
      (212) 801-9200
      simsons@gtlaw.com
      smuliand@gtlaw.com

      *Attorneys for The Estée Lauder Companies, Inc.*

16

## CERTIFICATE OF SERVICE

I, Christopher A. Mair, an attorney, hereby certify that on July 11, 2022, I caused the foregoing **DEFENDANT THE ESTÉE LAUDER COMPANIES, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered parties.

*Christopher A. Mair*
Christopher A. Mair